Baker et al., Appellants, *v.* Rangos et al.
Baker et al., Appellants, *v.* U. S. Utility Service Corporation et al.

334

335

Argued November 15, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Michael W. Burns,* with him *Wilbur McCoy Otto,* and *Dickie, McCamey & Chilcote,* for appellants.

*George Shorall,* with him *Thomas Levendos,* and *Thomas A. Livingston,* for appellees.

OPINION BY SPAETH, J., June 21, 1974:

This is an appeal from an order sustaining defendants' preliminary objections in the nature of a demurrer.

Appellants (plaintiffs below) are duly appointed trustees of the assets of the Penn Central Transportation Company (hereinafter "the railroad"), which is at present undergoing reorganization in the United States District Court for the Eastern District of Pennsylvania. Among the assets under appellants' control is the Hanlin Slag Dump, located along the railroad right-of-way in Washington County. In 1972, appellants initiated actions in the Court of Common Pleas of Allegheny County in an effort to recover damages for the unauthorized removal from the Hanlin Dump of 835, 617 cubic yards of slag valued at $1.65 per cubic yard, or a total of $1,378,768.05.

The defendants named in these actions are five corporations and two individuals: Ran-Per, Inc.; Unity Fuel and Construction Company, Inc.; Unity Trucking Company, Inc.; U. S. Utility Service Corporation, Inc.; Mountaineer Highway Abrasives Company, Inc.; and John Rangos and James Peretto. Each of the defendants save Ran-Per is an appellee here.

It appears from the pleadings that by written agreement of August 15, 1962, the railroad granted a license to Rangos authorizing him to remove slag from areas within the Hanlin Dump as indicated on a map that accompanied the agreement. In exchange for this license Rangos agreed to pay the railroad fifty-five cents per cubic yard for slag removed. On March 18, 1964, Rango's rights under the license were, with the consent of the railroad, assigned to Ran-Per, Peretto approving on behalf of Ran-Per. On February 24, 1965, Ran-Per was authorized to remove slag from additional areas as indicated on a new map. The railroad does

not appear to have had such a formalized relationship with any of the other defendants.

The relationship of the defendants to each other is not clear. It may be noted, however, that "Ran-Per" appears to derive from "Rangos" and "Peretto". Also, appellants have alleged that Ran-Per and Unity Trucking have the same business address, that Peretto's residence is the place where Unity Fuel does business, and that U. S. Utility is the successor to the rights and liabilities of Unity Trucking and Mountaineer.

At the outset of this litigation, in July of 1972, appellants filed a single complaint against all defendants, charging each with breach of contract, conversion, and conspiracy to commit conversion. The defendants filed preliminary objections in the nature of a demurrer. As to Ran-Per, the court below dismissed all counts, except that based on the license, with leave to appellants to file an amended complaint. As to the other defendants, the court dismissed all counts without leave to amend but without prejudice to appellants' right to file a new action against each defendant.[1]

In response to this order, appellants filed three complaints: an amended complaint against Ran-Per, charging it with breach of contract, conversion, and conspiracy to commit conversion; a new complaint against the other four corporate defendants, charging them with conversion; this was amended to add a count charging conspiracy to commit conversion; and a new complaint against Rangos and Peretto, charging them with conspiracy to commit conversion. Preliminary

---

[1] The court below reasoned that Rangos was relieved of liability on the license by a novation that resulted when the railroad consented to the assignment to Ran-Per. Since no privity of contract was alleged between the railroad and the other defendants, the counts based on the license were dismissed. The remaining counts were dismissed for insufficiency in pleading the material facts. Pa. R. C. P. 1019.

objections in the nature of a demurrer were filed to each complaint. On Ran-Per's preliminary objections, the court below ordered that an answer be filed to the counts of breach of contract and conversion but dismissed the conspiracy count; appellants have not appealed this order. On the other defendants' preliminary objections, the court dismissed both of the new complaints, without leave to amend; appellants have appealed these orders.

The questions presented by this appeal are: Does the amended complaint against the four corporate defendants state either a cause of action in conversion or in conspiracy to commit conversions? Does the complaint against Rangos and Peretto state a cause of action in conspiracy to commit conversion? We agree with the court below that the complaint against the four corporate defendants does not state a cause of action in conversion, and see no need to add to the court's discussion of that conclusion. As to the conspiracy charges, however, we think each complaint does state a cause of action.

### The Conspiracy Charges

The conspiracy charge against the four corporate defendants and that against the two individual defendants are nearly identical. Paragraph 36 of the complaint against the corporate defendants, and paragraph 18 of the complaint against the individual defendants, each alleges: In or about March, 1966, the exact time and date presently unknown to Plaintiff [the railroad], Defendants . . . wickedly, unlawfully and maliciously did agree, confederate, combine and form themselves in a conspiracy to effect the unlawful and malicious design to take and remove without notice, permission or payment therefor, slag material from all unauthorized areas within the Site. "All

unauthorized areas" refers to areas in the Hanlin Dump not covered by the license agreement between the railroad and Ran-Per. A copy of each of the two maps that accompanied the agreement, showing the Hanlin Dump and those areas where slag could be removed, was attached to the complaints.

The complaint against the corporate defendants continues:

"36. Pursuant to this agreement, combination and confederation, and in the pursuance of their unlawful purpose, Ran-Per, Inc. proceeded to take, and remove, unknown to the Plaintiff at that time, certain quantities of slag materials from all unauthorized areas within the Site, and continued to so illegally take and remove said slag materials during the months of April through November during each of the years 1966 through 1971.

"37. Pursuant to the agreement, combination and confederation among the parties aforementioned, Defendants, Unity Trucking Company and Mountaineer Highway Abrasives Company, through their respective directors, officers, agents, servants and/or employees, counseled Ran-Per, Inc. in their common purpose and design, and throughout the entire period of said agreement, combination and confederation, Defendants, Unity Trucking Company and Mountaineer Highway Abrasives Company actively and physically participated in the unlawful removal of slag materials from all unauthorized areas of the Site during the months of April through November and during each of the years 1966 through 1970."

Paragraph 38 makes the same charge against Unity Fuel but with reference to "the months of April through November and during each of the years 1966 through 1971."

Paragraphs 39 and 40 charge that U. S. Utility joined the conspiracy "[i]n or about March, 1971;" as

successor to Mountaineer and Unity Trucking and its own right it both "knowingly and actively counseled, encouraged and instructed Ran-Per, Inc. and other then existing members" in the common design, as well as participated in removing slag from unauthorized areas "at various times from April 1, 1971 through November 30, 1971."

Paragraph 41 describes some of the acts allegedly engaged in by the corporate defendants through their authorized agents:

"41. Pursuant to the agreement, combination, and confederation as aforementioned, each of the named defendants performed acts which effected the unlawful and wicked scheme and design, said acts consisting of but not limited to:

"(a) Physical removals of slag materials from all unauthorized areas of the Site . . . through the use of equipment owned and/or operated by each of the Defendants aforementioned;

"(b) Transporting and carrying away of slag material from the Site . . . without payment therefor;

"(c) Arranging for and effecting the disposal, sale and/or resale of some or all of said slag material after same had been removed from the Site;

"(d) Scheduling, arranging and effecting a distribution of monies received from the disposal, sale and/or resale of some or all of said slag material unlawfully removed from the Site; and

"(e) Arranging for and effecting duplication and/or falsification of records and written memoranda so as to disguise some or all of the acts aforementioned."

The acts the individual defendants are accused of are somewhat different. Paragraph 26 of the complaint alleges that they did the following:

"(a) Scheduling, arranging and establishing specific times for unauthorized removals of slag materials by personnel of the corporations aforementioned;

"(b) Scheduling, arranging and establishing the system and method of removals of slag from unauthorized areas within the Site by personnel of the corporations aforementioned;

"(c) Scheduling, arranging and establishing the method and means by which slag materials removed from unauthoribed areas within the Site would be transported and/or carried away from the Site;

"(d) Scheduling, arranging for and payment of funds to corporate personnel who performed the physical removals of slag;

"(e) Scheduling, arranging and establishing the disposal of, distribution and/or resale of some or all of the slag material which had been unlawfully removed from the Site;

"(f) Scheduling, arranging for and counseling personnel of the corporations aforementioned in bookkeeping methods and accounting procedures designed to disguise the activities and combination aforementioned."

Both the complaint against the corporate defendants and that against the individual defendants conclude with a demand for judgment in the amount of $1,378,768.05, representing the value of 835,617 cubic yards of illegally removed slag, "together with exemplary damages, attorneys' fees, interest and costs, all as appropriate."

## The Opinion of the Court Below

The court below dismissed the conspiracy charges in both complaints on the ground that they did not comply with Pa. R. C. P. 1019, which states in part:

"(a) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form.

"(b) Averments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge, and other conditions of mind may be averred generally.

. . .

"(f) Averments of time, place and items of special damage shall be specifically stated."

In arriving at this conclusion, the court laid out two ground rules:[2] First: "Pennsylvania Rule of Civil Procedure 1019(a) is to be interpreted strictly in pleading of a civil conspiracy. It has been held that facts averred in a complaint alleging conspiracy must be set forth with more particularity than those alleged in other trespass actions. Roberts v. Peoples Cab Co., 7 D. & C. 2d 632 (1955); Commonwealth v. Musser Forests, Inc., 69 Dauphin 379 (1956); Daub v. L. B. Smith, 8 Cumb. 153 (1958); Landau v. Western Pennsylvania National Bank, 445 Pa. 217, 282 A. 2d 335 [sic; 445 Pa. 217, 282 A. 2d 335] (1971)." And second: "[A]n allegation of maliciously and wickedly conspiring to convert is the same as an allegation of cheating, fraud or deceit. Whether the defendants have allegedly conspired in a malicious manner to convert the plaintiffs' slag materials or whether they have allegedly conspired to cheat or defraud a person from having goods they are not entitled to use is of no consequence."

In holding that the allegations were not sufficiently particularized, the court relied heavily on *Commonwealth v. Musser Forests, Inc.,* 69 Dauphin 379 (1956), which it described as "controlling," and which is summarized as follows: "The trespass action filed by the

---

[2] The following passages are quoted from the court's discussion of the preliminary objections to the complaint against Ran-Per. However, in discussing the preliminary objections to the complaints under consideration here, the court referred back to this discussion, stating that "[m]ost of what has been said regarding the complaint against Ran-Per is equally applicable against the other defendants."

Commonwealth [in Musser Forests] alleges that the defendants in concert had cheated and defrauded the Commonwealth and violated certain agreements with them pursuant to the 'Forest Tree Seedling Act,' the Act of May 5, 1927, P. L. 817 as amended by Act of June 21, 1947, P. L. 777, 32 P.S. §453, et seq. by selling seedlings for ornamental purposes. . . . In sustaining the defendant's preliminary objections, the Court ruled in a very able opinion that the 'defendants are entitled to know precisely the nature of the alleged action and the part that each took in it; with whom each conspired, and the time and places of the conspiracy; how it was effected; in essence, all the particulars of the conspiracy should be set forth with conciseness, so that the defendants will know what they must answer.' . . .

". . . Nowhere is it pleaded when any sales or offers to sell were made, no dates are given, the names of no purchasers or prospective purchasers are set forth, or the prices paid of offers given—in short, no particulars or facts are given whatsoever tying together the defendants in a conspiracy to defraud. . . ."

With reference to the conspiracy charge against the four corporate defendants, the court said: "The rather extensive description [in paragraph forty-one, quoted *supra* at pp. 5-6] of the type of activities allegedly carried on by the defendants specifies what was allegedly done. However, plaintiffs have failed to aver exactly where the activities took place. Averments of a conspiracy must be particularized so that the defendants can be apprised of what they are charged with and can prepare a defense. If the averments stated that the defendants or certain of their named agents had done a particular act at a certain place and specified the time, then defendants might know how to prepare their case. Further, concerning the element of conspiracy, there is no averment which specifies when,

where and how the defendants herein and the defendants named in the other two complaints had conspired. The complaint only states that they did conspire and this in itself is insufficient. Thus, Complaint No. 2 is no more specific than any other trespass complaint, Roberts v. Peoples Cab, supra, and the preliminary objections to it are sustained."

With reference to the conspiracy charge against the individual defendants, the court said: "The conspiracy count in the complaint against individual defendants Rangos and Peretto contains the same conclusory allegations of a conspiracy to convert slag materials as did the complaint against Ran-Per. The conspiracy count adds averments by Paragraph 26 [quoted *supra* at 6] . . . . It must be concluded that these additional averments taken in toto do not convey any information as to when and where Rangos and Peretto have 'scheduled' and 'arranged' the conversion, nor where in fact those arrangements were placed in motion, nor when, where, or how the agreement as basis for the conspiracy was made, and therefore, the conspiracy count . . . is insufficient and fails for lack of specificity."

### The Standard to be Applied in Determining the Sufficiency of the Conspiracy Charges

The court below recognized that in assessing the complaints, the standard to be applied is that prescribed by Rule 1019(a), which requires that "[t]he material facts on which a cause of action . . . is based shall be stated in a concise and summary form." However, as has been mentioned, the court below held that "in a pleading of a civil conspiracy," Rule 1019 (a) "is to be interpreted strictly."

The precedents cited by the court do not support the existence of such a requirement. *Roberts v. Peoples*

*Cab Co.*, 7 D. & C. 2d 632 (1955), states that there is such a requirement but cites no authority. *Commonwealth v. Musser Forests, Inc.*, 69 Dauphin 379 (1956), involved a conspiracy to defraud. Greater specificity in the allegations of the complaint was therefore required not because conspiracy was alleged but because of Rule 1019(b). Furthermore, although the court below does not remark upon the fact, the opinion on which it relied can no longer be regarded as authority because it is inconsistent with a later decision by the Supreme Court in the same case. *Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 146 A. 2d 714 (1958). This is discussed *infra* page 351 et seq. *Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A. 2d 335 (1971), neither makes nor supports the statement that allegations of conspiracy must be more specifically pleaded. The complaint in that case was held insufficient because it failed to comply with the general requirements of Rule 1019(a). Although the opinion is far from clear, the same can be said of *Daub v. L. B. Smith, Inc.*, 8 Cumb. 153 (1958).

It may be granted that in the area of criminal pleading there is a danger that "[c]onspiracy, because of its peculiarly broad application, has come to be used as a catch-all crime, especially in those cases where the prosecution has great difficulty in proving a specific crime." *Commonwealth v. Fabrizio*, 197 Pa. Superior Ct. 45, 58, 176 A. 2d 142, 148 (1961) (requiring strict construction of indictments charging conspiracy). It does not follow, however, that there should be a comparable requirement in civil pleading. Rule 1019(a) specifies no such requirement; and a civil defendant, unlike a criminal defendant, has available a wide variety of discovery procedures by which he may in advance of trial learn the specifics of the conspiracy alleged. *See* Pa. R. C. P. 4001 through 4025. Also, he has available several procedures (preliminary ob-

jections, Pa. R. C. P. 1028, motion for judgment on the pleadings, Pa. R. C. P. 1034, and motion for summary judgment, Pa. R. C. P. 1035) by which he may prevent a plaintiff from going forward with a groundless suit.

The citation by the court below of Rule 1019(b) is not in point. The court explained the citation by stating that "[appellant's] allegations are the same as allegations denoted as 'fraud' . . .," which Rule 1019(b) requires "shall be averred with particularity."

It may be granted that a plaintiff can allege "fraud" without employing that word. "Fraud" consists of any "false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another so that he shall act upon it to his legal injury. *Brainerd Dispatch Newspaper Co. v. Crow Wing County,* 196 Minn. 194, 264 N.W. 779, 780." Black's Law Dictionary 788 (4th ed. 1968). *See also In re Thorne's Estate,* 344 Pa. 503, 511, n.2, 25 A.2d 811, 816, n.2 (1942) (fraud consists of any artiface calculated to deceive a person to his disadvantage). In the present case, however, the allegations are not that the railroad was deceived or tricked by either the four corporate defendants or the two individual defendants, but that the defendants engaged in a conspiracy to commit conversion. "A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. *Pearl Assurance Company, Ltd. v. National Insurance Agency, Inc.,* 151 Pa. Superior Ct. 146, 30 A.2d 333 (1943)." *Gottesfeld v. Mechanics and Traders Ins. Co.,* 196 Pa. Superior Ct. 109, 115, 173 A.2d 763, 766 (1961). As fraudulent intent is not an element of conversion, it was not necessary that the complaints be read as pleading fraud.

This conclusion is not affected by the fact that the complaints pleaded a conspiracy to commit conversion. The elements of this tort will be stated below. It is sufficient to note here that fraud is not one of them.

## The Standard Prescribed by Pa. R.C.P. 1019(a)

It having been established that Rule 1019(a) is to be applied in determining the sufficiency of the conspiracy charges, it is in order to consider the standard prescribed by the rule in some detail.[3]

Rule 1019(a) requires fact pleading. 2A Anderson, Pennsylvania Civil Practice §1019.1 (1969). "The purpose of [1019(a)] is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case." *Landau v. Western Pennsylvania National Bank, supra* at 225, 282 A.2d at 339. A complaint therefore must do more than "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (statement made in reference to Fed.R.Civ.P. 8(a)). It should formulate the issues by fully summarizing the material facts. "Material facts" are "ultimate facts," *i.e.,* those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged. *See United Refrigerator Co. v. Applebaum,* 410 Pa. 210, 189 A.2d 253 (1963) (allegation of defense by accommodation parties that plaintiff was accommodated party to whom they were not liable sufficient; reason for accommodation evidentiary fact that need not be alleged); *Smith v. Allegheny County,* 397 Pa. 404, 155 A.2d 615 (1959) (complaint accusing defendants of failure to provide adequate drainage suf-

---

[3] Subsection (a) is not the only part of Rule 1019 that is applicable. Subsection (f) is also applicable, and is discussed below.

ficient; source and means of flow either through pipes or strata of rock a matter of evidence). Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts the plaintiff will eventually have to prove in order to recover, 1 Goodrich-Amram, Procedural Rules Service §1019(a)-2; *D'Antona v. Hampton Grinding Wheel Co.*, 225 Pa. Superior Ct. 120, 310 A.2d 307 (1973), and (2) they are "sufficiently specific so as to enable defendant to prepare his defense," *Commonwealth Environmental Pollution Strike Force v. Jeanette*, 9 Pa. Commonwealth Ct. 306, 308, 305 A.2d 774, 776 (1973).[4]

### Rule 1019(a) Applied to the Present Case

To determine whether appellants have alleged the "material facts" on which their cause of action is based, it is necessary first to define the elements of a civil conspiracy.

---

[4] Appellants argue that their complaints should be reviewed with special leniency because of the defendants' superior knowledge of the details surrounding the suits. There is support for the proposition that a plaintiff is to be given greater latitude when he pleads that the adverse party has exclusive or superior knowledge of crucial facts. 2A Anderson, *supra*, §1019.9 at 87-89. *See also* Line Lexington L. & M. Co. v. Pennsylvania Pub. Corp., 451 Pa. 154, 301 A. 2d 684 (1973); Goodrich-Amram, *supra*, §1019-1 at 105. *Cf.* Local 163 v. Watkins, 417 Pa. 120, 207 A. 2d 776 (1965). This does not mean that a plaintiff will be completely excused from summarizing the facts material to his claim. If he lacks "information necessary to the preparation of an adequate Complaint . . . [he should] commence his action by filing a praecipe for a writ. The action then having been commenced, the plaintiff would be free to obtain discovery within the scope and subject to the limitation of rules.' 5 Anderson Pa. Civil Practice, §4001.18 (1966 Edition), page 33." *Gross v. United Engineers & Constructors, Inc.*, 224 Pa. Superior Ct. 233, 237, 302 A. 2d 370, 372 (1973). Here, appellants have not pleaded the defendants' superior knowledge. Accordingly, they are not entitled to have their complaints reviewed with special leniency.

"[A] civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose. *Fife v. Great Atlantic and Pacific Tea Co.,* 356 Pa. 265, 52 A.2d 24 (1947); *Bausbach v. Reiff,* 244 Pa. 559, 91 Atl. 224 (1914)." *Landau v. Western Pennsylvania National Bank, supra* at 224, 282 A.2d at 339. A conspiracy becomes actionable when some overt act is done in pursuance of the common purpose or design held by the conspirators, *Wildee v. McKee,* 111 Pa. 335, 2A. 108 (1886), and actual legal damage results, *Laverty v. Varrarsdale,* 65 Pa. 507 (1870); *Rosenblum v. Rosenblum,* 320 Pa. 103, 181 A. 583 (1935).

It follows from this definition that a complaint must allege facts showing the existence of all of the elements indicated. However, to prove a conspiracy, a plaintiff is "not required to present direct and positive testimony of a collusive agreement to do something unlawful. The nature of the crime attempted usually makes it susceptible of no other proof than by circumstantial evidence." *Kaiser v. Ins. Co. of North America,* 274 Pa. 239, 243, 117 A. 791, 792 (1922). " 'When [a] plaintiff . . . relies on subsequent acts to establish the conspiracy, these acts must be such as to clearly indicate the prior collusive combination . . . , not slight circumstances of suspicion, and these subsequent acts must be such as to warrant the belief and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination . . . .' " *Novic v. Fenics,* 337 Pa. 529, 535, 11 A.2d 871, 874 (1940). Thus, if a plaintiff is unable to allege facts that are direct evidence of the combination and its intent, he must in order to comply with Rule 1019(a) allege facts that if proved will support an inference of the combination and its intent.

*Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 146 A.2d 714 (1958), illustrates how this rule should

be applied in assessing allegations of conspiracy. As has been mentioned, the court below relied heavily on an opinion filed in *Musser Forests* and reported at 69 Dauphin 379 (1956). That opinion, however, was rendered of no value by a later opinion filed in the same case by the Supreme Court.

In *Musser Forests* the Commonwealth filed a trespass action in which it alleged that pursuant to a conspiracy the defendants had fraudulently sold for ornamental purposes trees that they had contracted to sell for soil erosion control. The opinion cited by the court below found that the Commonwealth's allegations did not aver the facts with the particularity required by Rule 1019(b) and therefore sustained the defendants' preliminary objections and ordered the Commonwealth to file an amended complaint. This was done. In an opinion reported at 70 Dauphin 385, the court found the amended complaint also insufficient,[5] reiterating

---

[5] The heart of the amended complaint was paragraph five, which read in part as follows:

"(5) The defendants . . . intending to cheat and defraud the Commonwealth from and after September 11, 1937, up to and continuing until the date hereof, did unlawfully, wickedly, falsely and maliciously conspire and agree together to cheat and defraud the Commonwealth, and in pursuance of said illegal conspiracy, they have performed the following acts:

"a. The defendants have made 17 separate applications to purchase trees from the Commonwealth, and have made purchases totalling 2,787,000 trees at a total cost of $10,991.00. The sale value of the trees was $97,545.00. . . .

"b. The several defendants have treated the individual real property specified in the applications and the trees purchased for planting on said acreage as a single enterprise operated by Musser Forests, Inc.

"c. The several defendants arranged for and permitted the trees purchased as a result of their applications to the Commonwealth to be sold for ornamental purposes by Musser Forests, Inc. to its customers.

much of the language it had used in its first opinion (it was this language that was quoted in the present case by the court below).

On appeal to the Supreme Court the Commonwealth urged that "[i]f proof of the conspiracy and the intent may be made by inference, the plaintiff is not required in its complaint to set forth a time and place for a conspiratorial meeting or a date of an agreement so entered into." (Commonwealth's Paper Book at 27.) It is evident that the Supreme Court accepted this argument, for although the Commonwealth's amended complaint did not plead such a time or place or date, the court found that enough other facts had been al-

"d. The several defendants permitted and authorized employees of Musser Forests, Inc. to remove from their real property and resell to the customers of Musser Forests, Inc., for ornamental purposes, the trees purchased from the Commonwealth.

"e. The defendant, Fred Musser, did not own any land in his own name at any time when he made application to purchase trees from the Commonwealth, but nevertheless made applications totalling 400,000 trees which were purchased from the Commonwealth and which were sold by Musser Forests, Inc. . . .

"f. The defendant, Musser Forests, Inc., conveyed property specified in the application of L. M. Peelor to L. M. Peelor. After the purchase of the trees, L. M. Peelor then reconveyed the property to Musser Forests in order to avoid the agreement with the Commonwealth not to remove or sell trees for ornamental purposes. . . .

"g. The defendants, Dorothy and Fred Musser, conveyed the property specified in the applications to their children in order to avoid the agreement with the Commonwealth not to remove or sell trees for ornamental purposes. . . .

"h. The several defendants failed and refused to file the reports required under the act and in accordance with the applications.

"i. The several defendants filed a single false and misleading paper on behalf of all of them and as part of the conspiracy to cheat and defraud the Commonwealth in lieu of the individual reports with respect to the planting of said trees required by the Act and by the applications. . . ."

leged to "justify a finding of a civil conspiracy." Said the court:

"The averments of the complaint, if supported by proof at trial, would warrant a jury's finding that all of the contracts between the defendants and the Commonwealth were entered into by the defendants in furtherance of the original conspiracy and were carried to fruition by the subsequent breaches. Thus, the complaint is replete with averments of fact which, if proven, would justify a finding of a civil conspiracy on the part of the defendants to defraud the Commonwealth to its damage, and that the conspiracy was fully and effectively carried out by the defendants to their own pecuniary advantage.

"Since the defendants have chosen to file preliminary objections, in the nature of demurrers, every material and relevant fact well-pleaded and every inference fairly deducible therefrom are to be taken as true: *Byers v. Ward*, 368 Pa. 416, 420, 84 A.2d 307. Thus, for present purposes, it is admitted that the defendants have not only failed to conserve the seedlings and transplants as they were under express obligation to the Commonwealth to do but that they have actually sold the seedlings and transplants commercially for ornamental purposes. These averments and others in the complaint, such as defendants' actions in respect of the land specified for the planting of the seedlings and transplants and the one report they ultimately made jointly to the Commonwealth of their asserted disposition of the seedlings and transplants, support a reasonable inference that throughout the defendants were acting in concert with the common purpose of defrauding the Commonwealth for their personal gain." *Commonwealth v. Musser Forests, Inc., supra* at 209-10, 146 A.2d at 716.

In the present case appellants allege a combination of corporate and individual defendants, an intent

on the defendants' part to commit conversion, which is an unlawful act, the commission of overt acts pursuant to that intent, and resulting legal damage to the railroad. Thus the essential elements of a civil conspiracy are alleged. The corporate defendants are alleged to have distributed among themselves the monies received from their act of converting the slag (as the plaintiff in *Musser Forests* alleged the defendants had jointly reported to the Commonwealth as to the disposition of the seedlings). Proof of this allegation would support an inference that the corporate defendants acted pursuant to a combination. The individual defendants are alleged to have coordinated the removal activities of the corporate defendants (as the plaintiff in *Musser Forests* alleged the individual defendants there had done). Proof of this allegation would support an inference of combination. Granted the generality of appellants' allegations, they are sufficiently specific to advise the defendants what it is they are charged with having done. The complaints satisfy the requirements of Rule 1019(a).

## Pa. R.C.P. 1019(f)

The conclusion that appellants' complaints are sufficiently specific to comply with Rule 1019(a) is not dispositive. It is also necessary that the complaints comply with Rule 1019(f), which requires that "[a]verments of time [and] place . . . shall be specifically stated." It was the opinion of the court below that this requirement was not met.

As has been discussed, the decision of the Supreme Court in *Commonwealth v. Musser Forests, supra,* shows that in a complaint charging conspiracy it may be sufficient to allege times and places with less specificity than in other types of cases so far as concerns times when and places where the conspiracy was entered

into. So far as regards allegations of the time and place of acts taken pursuant to the conspiracy, appellants' allegations are no less specific than those made in *Musser Forests*. There the Commonwealth's amended complaint alleged that pursuant to the conspiracy the defendants had made applications to purchase a total of 400,000 trees, and had made numerous purchases and sales of the trees, without, however, alleging the date that any given application, purchase, or sale had been made. *See* footnote 5, pages 352 and 353 *supra*. Here appellants have alleged that the slag was converted during the months of April through November in the years 1966 through 1971; they have also distinguished among the defendants, alleging that Unity Trucking and Mountaineer participated in the conversions during April through November in each of the years 1966 through 1970, that Unity Fuel did the same, but for an additional year, 1971, and that U. S. Utility joined the conspiracy "in or about March, 1971."

The adequacy of appellant's allegations may be seen by comparing them with the allegations considered in *Framlau Corp. v. Delaware County*, 223 Pa. Superior Ct. 272, 299 A.2d 335 (1972). There the plaintiff had contracted to perform general construction work for the defendant. In addition to seeking the amount outstanding on the contract price, the plaintiff "set forth a claim for additional expenses allegedly incurred by plaintiff because defendant wrongfully delayed the work . . . ." *Id.* at 273, 299 A.2d at 336. Some of the delays (which were not caused by the defendant, such as strikes) were the subject of an extension agreement exonerating the defendant from liability for any costs incurred by the plaintiff. However, the plaintiff alleged in his complaint that there were additional delays not covered by the extension agreement. The lower court found the plaintiff's allegations as to the delays inadequate and dismissed the counts claiming

damages on account of them. This court affirmed. Speaking for the court, Judge CERCONE said: "[W]e are constrained to find [these allegations] vague, concerned with broad generalities and lacking in specificity. No reference to time, place or nature of event or situation is made against which purposeful answer could be legitimately and fairly required." *Id.* at 276, 299 A.2d at 337. In concluding that the defects in the allegations could not be cured, he continued:

"There is no fact set forth in plaintiff's complaint which would support a contention that the work would not have been completed on time had it not been delayed by strikes and job site conditions for which defendant was not responsible. All plaintiff's allegations may be true, but lacking reference to time, place or nature of defendant's purported disruptive action no implication can be drawn that excluding the delays covered in the extension agreement for which defendant was not responsible the work would not have proceeded as originally contemplated in the contract." *Id.* at 277, 299 A.2d at 338.

In *Framlau,* it will be observed, specific reference to the time, place, and nature of the defendant's alleged delaying acts was of crucial importance. The defendant could not be held for delays covered by the extension agreement. To recover, the plaintiff had to prove that the defendant's delaying acts were other than those covered by the agreement; to defend, the defendant had to know the time, place, and nature of the acts, so that it could determine whether the extension agreement could provide a defense. Therefore, allegations as to time and place were necessary to satisfy both subsections (a) and (f) of Rule 1019. *See also Carvella v. Handy Andy Food Mart,* 44 D. & C. 2d 133 (Lawrence Co. 1968) (site of fall determinative of which of several defendants was liable). In the present case, appellants have, as has been discussed,

generally specified the time the alleged conversions occurred, and the places from which the slag was allegedly removed by the defendants (areas "unauthorized" by the maps attached to the Ran-Per license agreement). It is not necessary that appellants allege and prove more than that the slag was taken from such areas by the defendants. Greater specificity as to time and place will not aid the defendants in answering the complaints. Except for Rangos and his assignee Ran-Per, at no time were the defendants authorized to remove slag from the Hanlin Dump. The specificity with which time and place must be alleged to satisfy Rule 1019(f) "depends on the nature of the complaint." Goodrich-Amram, *supra* §1019(f)-1 at 124. Given the nature of the complaints here, no greater specificity is needed.

There is one further consideration. "In every instance the allegation of time when the cause of action accrued must be sufficiently specific to enable the defendant to plead the statute of limitations if it is applicable." Goodrich-Amram, *supra* §1019(f)-1 at 124. Although appellants do not state the date on which the conspiracy was formed or the date on which the first overt act occurred, they do allege that the last acts taken pursuant to the conspiracy occurred on November 30, 1971, and that is sufficient. "[W]here there are continuous and repetitious overt acts or trespasses as a part of a continuing conspiracy, it has been held that the statute of limitations does not begin to run until after the commission of the last act of the conspiracy." *Commonwealth v. Fabrizio, supra* at 56, 176 A.2d at 147-48. *See also Helmig v. Rockwell Mfg. Co.,* 389 Pa. 21, 131 A.2d 622 (1957).

The order of the court below is reversed in part and the defendants required to answer the complaints so far as they charge the defendants with conspiracy to commit conversion.