## Bromiley v. Collins

*Jeffrey B. Conn,* for plaintiffs.
*Victor S. Jaczun* and *David Durben,* for defendants.

BECKERT, *J.,* February 3, 1977 — This case comes before us under local Rule *266 for disposition of preliminary objections by defendant Richard Collins to plaintiffs' second amended complaint in a trespass action, seeking damages for death and personal injuries arising out of a motor vehicle accident occurring on or about July 20, 1975. All of the preliminary objections focus upon the alleged failure of the second amended complaint (hereinafter simply referred to as complaint) to comply with the changes in pleading requirements necessitated by Pennsylvania's recent adoption of the No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, sec. 101 et seq., 40 P.S. §1009.101 et seq., effective twelve months after the date of its enactment. The objections raised are in the form of a motion to strike and a motion for a more specific pleading, and we will deal with them in that order.

Initially, however, since considerable research has not resulted in discovery (either by us or by

counsel for the parties) of any reported Pennsylvania cases dealing with the questions raised here, it seems appropriate to comment upon the purpose and scope of the No-fault Act and the procedural problems raised thereunder.

The announced purpose of the Act, as stated in section 102(b), is "to establish at *reasonable cost* to the purchaser of insurance, a Statewide system of *prompt* and *adequate* basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." The effect of the No-fault Act is to create two classes of motor vehicle accident victims, each with different items of compensable damage, namely, those whose injuries were serious injuries meeting a threshold level of severity defined by section 301(a) of the Act and those whose injuries were not serious: Singer v. Sheppard, 464 Pa. 387, 346 A. 2d 897, 901 (1975). The first class recovers its economic losses, such as medical expenses and lost wages, from its no-fault insurance carrier and is permitted, by virtue of the new statutory cause of action bestowed upon it, to sue for general damages under traditional tort law. The second class, i.e., the "non-seriously" injured, is relegated to recover only its economic losses from its no-fault carrier and an action for general damages is barred.

It, therefore, is evident that, before an accident victim is entitled to use the court system, he must plead, as a condition precedent, that one or more of the requirements enumerated in section 301 of the Act had been met. The above section is as follows:

"1009.301 Tort liability

"(a) Partial abolition. — Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provi-

sions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

". . ."

"(4) A person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act. A person is not liable for loss which is not compensated because of limitations in accordance with subsection (e) of section 202 of this act.

"(5) A person remains liable for damages for non-economic detriment if the accident results in:

"(A) death or serious and permanent injury; or

"(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750). For purposes of this subclause, the reasonable value of hospital room and board shall be the amount determined by the Department of Health to be the average daily rate charged for a semi-private hospital room and board computed from such charges by all hospitals in the Commonwealth; or

"(C) medically determinable physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days; or

"(D) injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe.

". . ."

Therefore, if the prospective plaintiff cannot shoulder his burden of pleading and ultimately proving that one of the so-called thresholds has been crossed, then his complaint or cause of action must be dismissed. Thus, reference in the complaint to the statutory thresholds appears now to be as much a pleading requirement as is the somewhat analogous requirement, under our rules of court, that a plaintiff state whether the damages claimed exceed the amount requiring referral to arbitration. Within the framework of the foregoing discussion, we will examine the merits of defendant's preliminary objections.

## MOTION TO STRIKE

Defendant contends that paragraph 18 of plaintiffs' complaint is deficient since the injuries alleged therein are, by their very nature, nonpermanent. Paragraph 18 in its entirety reads as follows:

"18. As a result of this action, minor plaintiff, Theresa Bromiley, has suffered injuries which are serious and permanent, including but not limited to contusions of the forehead, lacerations of the upper lip, cervical sprain, bruises, contusions and/or abrasions of various portions of the body, including the right arm, right shoulder, neck and back; severe damage to her nerves and nervous system, and various other ills and injuries."

In dealing with the problem raised by defendant, we find ourselves sailing in completely uncharted waters and, therefore, have the pleasure and burden of attempting to set forth how an allegation should be worded and what such an allegation should include in order to qualify as crossing the

threshold from no-fault recovery to traditional tort law damages.

We believe that it is most important to keep in mind two tenets, namely, that fact pleading still prevails in this Commonwealth and, secondly, that one of the prime objects of the No-fault Act was to remove the "small cases" from the court house, and to give to those involved in less serious accidents prompt and expeditious recoveries of smaller but undisputed dollar awards, while at the same time leaving the courts relatively free for more serious litigation which focuses on which party was at fault.

Within this framework, we have great difficulty in concluding that the bald assertion that the injuries enumerated in paragraph 18 were "serious and permanent" is any more a sufficient averment than would be the mere legal conclusion that such injuries qualified under section 1009.301(5)(A) of the Act. Even before the advent of the No-fault Act, we doubt that such an allegation could escape sustainable preliminary objections. At the very least, we believe that the complaint should state which injuries are permanent and serious and which are not: Kearns v. Peterson, 25 D. & C. 2d 213 (1961). See also Williams v. McCormick, 64 Luz. 83 (1973). Nor do we know whether plaintiff may be relying on §1009.301(5)(D), namely, that the injury "in part, consists of cosmetic disfigurement which is permanent, irreparable and severe." And we assume that defendant was met with the same dilemma.

But even if specific injuries are pleaded and each is labeled as to whether or not that injury is serious and permanent, or results in cosmetic dis-

figurement, we still do not believe, under the rationale of the No-fault Act, i.e. expeditious handling of injury claims, that such a pleading should suffice.

What we interpret defendant to be saying is that paragraph 18 is not such a statement of "The material facts on which a cause of action is based and shall be stated in concise form . . ."
(that is, the averment of the required conditions precedent under the No-fault Act to permit one to obtain the key to the court house) as is required by Pa. R.C.P. 1019(a).

It is plaintiff's burden to plead those "ultimate facts" which are essential to prove his claim: Baker v. Rangos, 229 Pa. Superior Ct. 333, 324 A. 2d 498 (1974). It has always been our understanding that the purpose of fact pleading is to make it possible to dispose of cases at some preliminary state and, thus, avoid the waste of time and money in a trial. Assuming that we are correct in this assumption, why then should plaintiff not be required to plead with specificity the injuries which have been sustained, and not merely the conclusion that the injuries are serious and permanent? Certainly, the burden of proof would rest on plaintiff so to establish that aspect of his case at the time of trial, and this could be accomplished only by expert testimony from one schooled in medicine, unless the very nature of the injury made it evident that the injury was serious and permanent, e.g., the loss of a limb.

If proof is later required, then why should plaintiff not be required to plead not only which injuries are serious and permanent but also the fact that he had been so advised by a physician — if this be the case — rather than to require defendant to proceed

with the taking of interrogatories or depositions, or, worse yet, to wait until the time of trial to establish that fact?

If, in fact, plaintiff has no place in the court room because he has failed to cross the threshold then the case should not be permitted to congest the courts, thus delaying the disposition of cases properly triable, nor should it be permitted to erode the defense budgets of insurance companies, keeping in mind that one of the announced purposes of the No-fault Act was to " 'establish at reasonable cost to the purchaser of insurance, . . . prompt and adequate . . . benefits.' ": Singer v. Sheppard, supra.

It, therefore, appears to be mandated by the Act that the procedural system attempt, within its proper bounds, to find the most expeditious way to keep cases that belong in no-fault out of the court house. If this is not done, the Act will not work and prompt and adequate loss benefits will not inure to the citizens of this Commonwealth.

Since the section 301(a)(5)(A) exception to no-fault disposition (i.e., the "serious and permanent" injury exception) will, we believe, constitute the most commonly pleaded grounds for crossing the threshold to tort law, we are constrained to sustain the defendant's motion to strike paragraph 18 with leave granted to plaintiffs to file a third amended complaint wherein the nature of the injuries shall be pleaded with specificity. Also, each injury shall be labeled as to serious and permanent or as to being cosmetically disfiguring, if such be the case, and the conclusions pleaded shall then be required to be supported by an allegation that the conclusion is based upon competent medical advice, which will be produced at the time of trial, or,

in the alternative, that the seriousness and permanency of the injury are self-evident from the nature of the injury itself.

The third paragraph of defendant's motion to strike takes issue with the wording of paragraph 20 of plaintiffs' complaint, which alleges that the minor plaintiff:

" . . . has suffered and will suffer a severe loss of her earnings and impairment of her earning capacity and power, which such loss of income and/or impairment of her earning capacity or power has and will exceed the sum recoverable under limitations in 40 P.S. §1009.202(a),(b), (c) or (d)."

Defendant's objection goes to plaintiffs' combining of the past and future tenses in that allegation, defendant arguing that plaintiffs should not be allowed to sue for losses in excess of the basic loss benefits provided for under section 202 of the Act until such time as the actual dollar amount of plaintiffs' losses has accrued beyond the threshold limits stated in the various subsections thereunder.

Obviously, defendant is correct in contending that plaintiff either has or has not exceeded the sums recoverable as basic loss benefits, and that no tort recovery can ultimately be had absent proof of plaintiff's actual (rather than prospective) loss in excess of the limits imposed by section 202. However, we do not believe that the degree of present certainty required to sustain a plaintiff's ultimate right of recovery must likewise be shown to exist at the time suit is instituted. If, when the complaint is filed, plaintiff includes an allegation that losses either have exceeded or will exceed the amounts specified in section 202 then there can be

no doubt but that a defendant has been clearly apprised of the basis of plaintiff 's claim. Should the anticipated losses not occur, then it is equally evident that at some later point in time plaintiff will find himself out of court. Whether that result is reached upon a motion for summary judgment or by a jury determination after appropriate instruction concerning threshold requirements under the Act is of no consequence to us now; it is sufficient for us to note that we see no particular harm resulting to defendant from our allowing plaintiff a liberal right to plead what appears to be a future certainty, that one or more of the statutory thresholds will be crossed. Conversely, to require a plaintiff to wait until basic loss benefits under the Act have actually been exceeded could result in unwarranted delay in a court system which is already subject to criticism for bringing cases to trial too slowly.

Defendant contends that the failure of a plaintiff to exceed the threshold limits of the statute under which he seeks recovery is a jurisdictional defect which deprives him of his cause of action. While we are inclined to agree with this as an ultimate conclusion, for reasons previously stated, we are unwilling to dismiss the complaint now before us. Rather, we choose to deny defendant's objection as premature, without prejudice to his right to raise the same argument at some appropriate future time should plaintiff ultimately be unable to show that the statutory prerequisities have been met. Objection to the jurisdiction of a court over the subject matter can never be lost by waiver, estoppel or consent and may be raised at any stage of the proceedings: Drummond v. Drummond, 414 Pa. 548, 200 A.2d 887 (1964); Brenner v. Sukenik,

410 Pa. 324, 189 A. 2d 246 (1963); 10 P.L.E. 27, §22. That is to say, we accept the basic reasoning of defendant and the cases he relies upon,[1] but we disagree concerning the time of the decision as to whether plaintiff is able to state a valid cause of action.

The fourth paragraph of defendant's motion to strike is likewise directed against paragraph 20 of the complaint and challenges the statutory authority relied upon therein. That objection appears meritorious, in that sub-sections 202(a), (c), and (d) seemingly have nothing to do with the "severe loss of her earnings and impairment of her earning capacity and power" claimed in the minor plaintiff's paragraph 20. We, therefore, grant defendant's motion to strike as to the surplus subsections cited, which we regard as impertinent and irrelevant, and direct the parties to disregard them, without need for formal amendment, leaving plaintiff to rely upon the remaining subsection 202(b).

Paragraph five of the preliminary objections takes issue with paragraph 21 of the complaint for essentially the same reason that defendant objected to paragraph 20, discussed previously — the complaint alleges that plaintiff "has been and will be obliged to receive and undergo medical attention and care" in amounts in excess of threshold limits, and defendant contends that suit is not yet proper inasmuch as the complaint does not allege that those limit amounts have been paid. For reasons stated earlier, we reject this argument.

Defendant further argues that paragraph 21 of

---

1. See Sullivan v. Darling, 367 N.Y. Supp. 2d 199 (1975); Lasky v. State Farm Insurance Co., 296 S. 2d 9 (Florida, 1974).

the complaint is contrary to subsection 301(a)(5)(B) of the Act insofar as the paragraph alleges that the minor plaintiff will continue to be obliged to make future payments for medical care and attention. It is defendant's position that such necessary medical services are "allowable expenses" under the Act and, therefore, fully compensable by plaintiff's insurer and not recoverable from defendant. While we frankly have considerable difficulty reconciling section 301 (a)(5)(B) with the concept of "allowable expense" as it is referred to in section 202(a) and defined in section 103, we are satisfied that we should rely heavily upon the provision in section 301(a)(5)(B) allowing recovery of tort damages where the "reasonable value of reasonable and necessary medical . . . services" exceeds $750, since it is the clear purpose of section 301 to provide the formula for determining when a civil action should lie. Insofar as reference to "allowable expense" appears ambiguous or irreconcilable with that section, we will disregard the use of that term.

We find that the remaining preliminary objections, including defendant's motion for more specific pleading, are without merit and do not warrant further discussion and summarily dismiss them.

## ORDER

February 3, 1977, the preliminary objections by defendant Richard Collins to plaintiffs' second amended complaint are hereby dismissed and denied, with the exception of objections number two and four, in the form of a motion to strike, which are sustained to the extent set forth in the forego-

ing opinion, leave being granted to plaintiff to file an amended complaint no. 3, consistent with the foregoing opinion within 20 days from the date hereof.