## Baldwin v. McGrath (No. 1)

*Lewis H. Markowitz*, for plaintiff.
*Victor Dell'Alba*, for defendants.

ERB, *J.*, August 24, 1978—Plaintiff has filed a complaint to which defendants McGrath, McMenamin and Mills have filed preliminary objections, which are before the court for determination. Defendant Memorial Osteopathic Hospital has not joined in the preliminary objections but has answered the complaint. This opinion, therefore, will not deal with the allegations as they relate to this defendant.

The complaint alleges that plaintiff and defendants McGrath, McMenamin and Mills are licensed to practice as doctors of osteopathy; that defendants McMenamin and Mills are the principals and acted for York Internists Ltd., which is also named as a defendant; that plaintiff and individual defendants engaged in the practice of osteopathy in

competition with each other; that plaintiff enjoyed a good reputation in his profession; and individual defendants would benefit from any diminution of his practice.

In count I, entitled "Conspiracy," the complaint alleges: that immediately prior to September 29, 1975, the three individual defendants, acting as individuals and as agents for the two corporate defendants, conspired to injure plaintiff and to ruin him in his profession to their competitive advantage; that in furtherance of this conspiracy, on September 29, 1975, they removed plaintiff from the departmental rotation of electrocardiographic interpretations and overreads; that they further gave false information to Mr. Harry Gross and Dr. Leon Pordy, to unfavorably depict plaintiff's ability to perform the electrocardiographic interpretations and overreads; that on September 29, 1975, by agreement of the three individual defendants, a letter was sent by defendant McGrath to plaintiff, which implied that plaintiff was unfit to perform the aforementioned services; that on January 15, 1976, a letter, signed by all three individual defendants, again referring to plaintiff's unfitness, was sent to the Chairman of the Board of Directors of Memorial Osteopathic Hospital, with copies to the entire Board, Mr. Hostler, Dr. Corcoran, John Horty, Esq. and the entire staff executive committee; that individual defendants excluded plaintiff from meetings of the Department of Internal Medicine; and as the result, plaintiff has suffered damage.

Defendants have demurred to this count of the complaint.

In Baker v. Rangos, 229 Pa. Superior Ct. 333, 324 A. 2d 498 (1974), the court said, at page 351:

" '[A] civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose [citation omitted]. A conspiracy becomes actionable when some overt act is done in pursuance of the common purpose or design held by the conspirators [citation omitted], and actual damage results.' "

The complaint contains allegations, if true, of all of the requisites to establish a civil conspiracy. More specifically, paragraphs 12 and 13 allege the combination formed by the defendants to commit specific unlawful acts against plaintiff; paragraphs 14 to 20 allege overt acts in pursuance of the conspiracy; and paragraph 21 alleges resulting damage to plaintiff.

Defendants contend that there are insufficient facts to establish that tortious acts were committed in furtherance of the alleged conspiracy. The court, in Baker v. Rangos, supra, makes it clear, however, that the overt acts alleged need not be tortious.

The agreement to pursue an unlawful course or a lawful course in an unlawful manner, which may be the contemplation of a tortious act, and the commission of an overt act toward that goal, which caused damage, will sustain this cause of action. The complaint allegations meet this criteria.

In counts II and III, entitled "Libel," the complaint alleges that the letters of September 29, 1975, and January 15, 1976, were written and signed as already discussed; that they were meant to convey and did convey to others that plaintiff did not have the expertise to accurately make electrocardiographic interpretations, which might prevent patients from receiving proper care; that the

statements were false; and that plaintiff was damaged by them.

Defendants have demurred to these counts of the complaint.

Libel has been defined repeatedly by the appellate courts as a maliciously written or printed publication which tends to besmirch a person's reputation or to expose him to hatred, contempt, or ridicule, or to injure him in his profession: Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A. 2d 899 (1971); Cosgrove Studio & Camera Shop v. Pane, 408 Pa. 314, 182 A. 2d 751 (1962).

The Act of August 21, 1953, P.L. 1291, sec. 1, 12 P.S. §1584(a), provides that " . . . the plaintiff has the burden of proving, when the issue is properly raised: (a) The defamatory character of the communication; (b) Its publication by the defendant; (c) Its application to the plaintiff; (d) The recipient's understanding of its defamatory meaning; (e) The recipient's understanding of it as intended to be applied to the plaintiff; (f) Special harm resulting to the plaintiff from its publication; (g) Abuse of a conditionally privileged occasion."

In addition the Act of April 11, 1901, P.L. 74, sec. 3, 12 P.S. §1583, requires that plaintiff establish motive or negligence before a jury can award damages.

The complaint therefore contains a sufficient pleading, if true, to establish the two counts of libel. More specifically, paragraphs 24 and 32 of the complaint allege that letters sent by defendant about plaintiff were defamatory and attaches these letters as exhibits; paragraphs 25 and 33 allege publication of these comments by sending or showing the letters to other colleagues and the administrator of the hospital; paragraphs 26 and 34 allege

an understanding of the defamatory meaning by the recipients; paragraphs 27 and 35 allege malice; and paragraphs 28 and 36 allege harm to plaintiff.

While defendants contend that the letters are not capable of a defamatory meaning, the court in Corabi v. Curtis Publishing Co., 441 Pa. 132 (1971), said at page 442: " 'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' "

Applying this standard to the two letters, introduced as Exhibits A and B to the complaint, it is apparent that defendants are suggesting that plaintiff was incompetent and a threat to a patient's well-being with regard to certain of his professional activities. This is certainly derogatory to his standing as a physician.

Defendants' further contention that there is no allegation of publication of the letters is patently not accurate. Plaintiff alleges publication of the letters in count III, to named individuals and of the letter, in count II to unknown individuals. After discovery is completed, plaintiff should be given the opportunity to amend his complaint to add such information concerning publication, if possible.

Defendants' demurrer to count IV of the complaint entitled "Unfair competition" contends that no tort action of this nature exists in Pennsylvania. Plaintiff has been unable to cite a Pennsylvania case allowing recovery on this basis, nor does the court's research disclose any case; therefore, the demurrer must be sustained.

Count V, entitled "Interference with profession and business" alleges that plaintiff as a member of

the Internal Medicine Staff of Memorial Osteopathic Hospital, enjoyed the privilege of electrocardiographic overreads and received professional fees for this service; that plaintiff was removed from this privilege by the individual defendants acting through defendant, McGrath; that while defendants acted under the color of "peer review" they had no such authority and were aware that no such authority existed; that these actions of the defendants drove plaintiff from the position of osteopathic medicine; and that plaintiff was qualified to perform the review from which he was removed and had never improperly performed this service. This count requests damages for the intentional interference, without privilege, with plaintiff's business. This course of action has long been recognized in Pennsylvania. The Restatement of Torts, dealing with the action, has been cited with approval in Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A. 2d 472 (1960), and Glenn v. Point Park College, 441 Pa. 474, 272 A. 2d 895 (1971).

The Restatement, Torts, §766 states: " . . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

Defendants demurrer is based on the fact that plaintiff did not specifically allege that defendants' actions were not privileged. The complaint, however, in paragraphs 62 and 65, alleges that the actions taken by defendants were not supported by the procedure of "peer review" upon which authority the actions were purported taken.

The only basis for privilege which might be raised

in the fact situation pleaded by the complaint would be the application of the Act of July 20, 1974, P.L. 564, sec. 1, 63 P.S. §425.1, entitled Peer Review Protection Act. The act provides, in section 3(a), for protection to persons providing information concerning peer review and, in section 3(b), to members of peer review organizations from criminal or civil liability. Section 3(b)(2), however, provides that the protection afforded to members of such reviewing organizations shall not apply ". . . with respect to any action taken by any individual if such individual, in taking such action, was motivated by malice toward any person affected by such actions."

The complaint abundantly and repeatedly alleges that the action taken by defendants was motivated by malice; therefore, since the act does not afford protection even if defendants were acting as a peer review organization under the act, and since malicious acts are never privileged, the complaint meets the requirement of pleading that the acts of defendants were not privileged.

Finally, as to defendants' request for a more specific pleading as to all counts of the complaint, there are sufficient facts set forth, with adequate detail, to establish the basis for plaintiff's claim and to allow defendants such information concerning the alleged causes of action to require an answer.

Any additional information desired by defendants may be gained by discovery. Defendants' requests in this regard, therefore, must be denied.

Accordingly, we enter the following

## ORDER

And now, August 24, 1978, defendants' preliminary objections are refused and denied, with the

exception of the preliminary objection in the form of a demurrer to count IV of plaintiff's complaint which is sustained.

Defendants shall file a response to plaintiff's complaint within 30 days of the date of this order.