**Borough of Shippensburg v. Kelley**

*J. McDowell Sharpe* and *Charles E. Shields III,* for plaintiff.
*Evan C. Pappas,* for defendants Johnson.
*W. Scott Arnoult,* for defendant Kelley.

HERMAN, *J.,* September 15, 2006—

## INTRODUCTION

Before the court are two separate but related motions for summary judgment to the complaint filed by the plaintiff, the Borough of Shippensburg. The defendants argue the borough filed this action beyond the statute of limitations.[1] The borough answered the motions and the court has reviewed the available record and briefs of counsel.

## BACKGROUND

Richard C. Kelley was employed as the borough's water superintendent and was responsible for maintenance and oversight of a certain timbered tract of land encompassing a reservoir which belongs to the borough known as Gunter Valley.[2] The land at issue is in northern Franklin County in a remote area of woodlands lying upstream from a reservoir which supplies water to the borough. Access to Gunter Valley was through a locked gate near the borough water treatment plant. Kelley had a key to the gate and exercised primary control over access, according to the borough.

In an effort to respond to DER (now DEP) concerns about problems caused by dead trees falling into the

---

1. Defendant A.C. Johnson died during the pendency of this suit. The borough intends to open an estate and have an administrator appointed so as to allow this action to proceed.

2. The Borough of Shippensburg is divided between Franklin and Cumberland Counties. Gunter Valley lies within both counties.

water supply, the borough decided to clear timber from the reservoir area. A meeting was held in March of 1991 attended by the borough's then-Manager Kevin De-Febbo, the borough's then-Solicitor Forest Myers, Richard C. Kelley, and Donald Johnson. Donald Johnson and his father Albert "A.C." Johnson owned and operated a local sawmill. Donald Johnson received a key to Gunter Valley under an arrangement whereby the Johnsons would clear timber from a designated area in return for keeping the wood generated by the cleanup; no money was to change hands. The solicitor was to prepare a written contract to memorialize the scope of the intended timbering but unfortunately this was never done.

Donald Johnson eventually stopped work in Gunter Valley and removed his equipment, though there is a dispute about precisely when this occurred and what the reasons were for the work's cessation. The record is conflicting as to whether Donald Johnson stopped work in late 1992 after the borough asked him to or whether he stopped work in April of 1993 once he was asked to by the then-Borough Manager Kevin DeFebbo. No written contract had ever been drawn up which defined the scope of the timber operations.[3] There is also indication in the record the Johnsons continued removing timber after April 1993 and as late as April of 1994.

---

3. To support his claim that he stopped work in the valley in late 1992, Donald Johnson cites to his grand jury testimony of March 30, 2000 in a criminal case for bribery brought in Cumberland County against Kelley. This prosecution arose out of his employment with the borough and circumstances either the same or similar to the instant civil case. We do not currently have that court record before us but it appears the criminal action was filed in 2000 and resulted in a conviction in 2002 which was affirmed on appeal in 2005. Donald Johnson was not charged with any crime.

An article appeared in the *Patriot News* on April 18, 1993 entitled "Borough Seeks Probe Regarding Tree-Theft Rumors." (Exhibit A, Kelley's motion.) According to the article, the solicitor asked the Franklin County District Attorney to look into rumors which had been circulating in the community about unauthorized timber removal from Gunter Valley by an unnamed local lumberman with the help of at least one borough employee. The district attorney, by letter dated May 4, 1993, asked the Pennsylvania State Police to investigate the matter. (Exhibit A, the borough's answer to Kelley's motion.)

Trooper Michael Gayman of the state police was assigned to the case on February 1, 1995. On March 7, 1995, he determined he had probable cause to file criminal charges against Kelley and thereafter notified borough officials of his findings. (Trooper Gayman's affidavit, exhibit C, the borough's answer to Kelley's motion.) Upon learning its own water superintendent was the subject of criminal charges, Kelley's employment with the borough ended. The borough hired forestry consultant David A. Sirna to perform a survey to determine the extent and value of the timber removed from Gunter Valley. Mr. Sirna's report was dated July 7, 1995 and delivered to the borough on or about that date.

The borough filed a praecipe for writ of summons against the defendants on March 22, 1996 which was served on all defendants on March 28, 1996. The complaint filed on June 6, 1996 raised claims of conversion, breach of implied contract and conspiracy to defraud. The borough alleges the Johnsons, with Kelley's knowledge, cut timber from Gunter Valley and paid Kelley money to allow or not to disclose they were cutting the timber in an unauthorized manner. The borough filed an

amended complaint on March 21, 1997, again asserting these causes of action. The Johnsons admit they cut the timber but deny any wrongdoing on the grounds they had the necessary permission to do the cutting. They also assert a counterclaim based on the doctrine of quantum meruit for the value of their services which went uncompensated once they complied with the borough's demand to stop work in Gunter Valley.

The borough filed a praecipe on March 24, 2006 to list this case for trial. The court held a pretrial conference on August 2 and set deadlines for the motions for summary judgment and also scheduled jury selection for September 11. The trial is set for October 9-13.[4]

## DISCUSSION

### Summary Judgment

Pennsylvania Rule of Civil Procedure 1035.2 provides:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports,

---

4. The time lapse between the close of the pleadings and the praecipe to list was due in part to the pending criminal action against Kelley in Cumberland County.

an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

The non-moving party, in this case, the borough, must come forward with prima facie evidence which shows they filed this action within the period required by the applicable statute of limitations. The court in considering the defendants' motions must view the record in the light most favorable to the borough as the non-moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the movants. *Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159 (1997).

In addition, oral testimony alone, either through testimonial affidavits or depositions of the moving party or his witnesses, is insufficient to establish the *absence* of a genuine issue of material fact, even if the affidavits or depositions are uncontradicted. On the other hand, such affidavits or depositions may be sufficient to show the *existence* of a genuine issue of material fact. The question of whether or not such evidence is credible is one which must be resolved by the jury. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); *Nanty-Glo Boro v. American Surety Co.,* 309 Pa. 236, 163 A.2d 523 (1932).

*Statutes of Limitations and the Discovery Rule*

The statute of limitations begins to run when the right to institute and maintain a suit arises. *Pocono International Raceway Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 468 A.2d 468 (1983). Once the statutory period within

which suit must be brought has passed, a complainant is barred from bringing suit unless it is established that an exception to this general rule applies which tolls the running of the statute. *Id.* The "Discovery Rule" is such an exception. Essentially, the rule provides that where a party does not know he has been injured and such knowledge could not have been reasonably ascertained within the statutory period, the limitation period does not begin to run until the discovery of the injury is reasonably possible. *Taylor v. Tukanowicz,* 290 Pa. Super. 581, 435 A.2d 181 (1981).

With regard to causes of action for conspiracies alleged to have been committed over an extensive period of time, where there are repetitive acts committed as part of continuing conspiracy, the applicable statute of limitations does not begin to run until after the commission of the last overt act in furtherance of the conspiracy. *Baker v. Rangos,* 229 Pa. Super. 333, 324 A.2d 498 (1974). Where an underlying claim sounds in fraud, the running of the applicable statutory period is tolled by wrongful conduct until such time as the fraud should have been discovered by the victim through the exercise of due diligence. *Beauty Time Inc. v. VU Skin Systems Inc.,* 118 F.3d 140 (3d Cir. 1997) (citations omitted); *Rubin Quinn v. Kennel,* 832 F. Supp. 922 (E.D. Pa. 1993).

Whether the statute of limitations has run is usually a question of law for the court. However, where the issue involves a factual determination, specifically, whether a plaintiff has exercised reasonable diligence in discovering the harm, such a determination must be made by the jury. *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 153 A.2d 477 (1959).

*The Johnsons' Motion*

The tort of conversion is defined as "the deprivation of anther's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification. . . . Specific intent is not required, . . . but rather, an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort." *Shonberger v. Oswell,* 365 Pa. Super. 481, 484-85, 530 A.2d 112, 114 (1987). The statute of limitations for an action in conversion is two years.[5]

The Johnsons contend the conversion claim was untimely filed because the borough knew or should have known of the alleged conversion before April 4, 1994, the date when the Johnsons assert this action was filed. In support, the Johnsons argue Donald Johnson stopped work in Gunter Valley and removed his equipment in late 1992 after he was asked to do so by the borough. The Johnsons cite to Donald Johnson's grand jury testimony given in the Cumberland County criminal case.

Preliminarily we find this action was commenced, not on April 4, 1996, but on March 22, 1996, the date on which the borough filed a praecipe for a writ of summons. We therefore disagree from the outset with any argument the defendants make which is premised on April 4, 1996 as being the date on which the action was commenced.

We have not been provided with a transcript from the Cumberland County grand jury proceeding. However, even if we had been, the Johnsons could not prevail in

---

5. An action for taking, detaining or injuring personal property, including actions for specific recovery thereof must be commenced within two years. 42 Pa.C.S. §5524(3).

this motion as to the conversion claim. This is because they bear the burden of proving the statute of limitations has run, which is an affirmative defense they themselves have raised. *Fine v. Ceccio,* 582 Pa. 253, 870 A.2d 850 (2005).

Where the borough has produced prima facie evidence to contradict Donald Johnson's assertion that he removed no timber from Gunter Valley after 1992, and indeed the borough has produced such evidence through the affidavit of one Thomas L. Holtry, the question of precisely when the Johnsons stopped timbering and therefore whether the borough filed this action in a timely manner is a factual question for the jury to resolve at trial. *Penn Center, supra.* Mr. Holtry's affidavit (attached to the borough's answer to the Johnsons' motion) states:

"Troy L. Holtry, 9180 Newburg Road, Newburg, Pennsylvania, being duly sworn according to law, deposes and says:

"(1) He has spend a great deal of time in and around Gunter Valley in the area of the main gate into Gunter Valley near the Roxbury water treatment plant for Shippensburg.

"(2) He often saw trucks of Donald Johnson or A.C. Johnson coming out of Gunter Valley hauling cut timber.

"(3) He specifically recalls seeing Johnsons bring timber out of Gunter Valley *not earlier than April of 1994* because he saw them hauling timber during fishing season." (emphasis supplied)

Through this affidavit, the borough has produced prima facie evidence the alleged conversion of timber was ongoing at least as late as April 1, 1994. This is suf-

ficient in itself to raise a factual question which precludes us from finding as a matter of law that the borough, in filing suit on March 22, 1996, did so beyond the two-year statute of limitations for conversion.

There is another, related reason why granting summary judgment in favor of the Johnsons as to the statute of limitations is inappropriate and this touches on the claim of conspiracy to defraud. A civil conspiracy is "a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." *Baker v. Rangos, supra* at 351, 324 A.2d at 506. The statute of limitations for conspiracy is the same as it is for the underlying action which forms the basis of the conspiracy. *Ammlung v. City of Chester,* 494 F.2d 811 (3d Cir. 1974). This would be two years under 42 Pa.C.S. §5524(7).

Where there are repetitive acts committed as part of a continuing conspiracy, the statute of limitations does not begin to run until after the commission of the last overt act in furtherance of the conspiracy. *Baker, supra* at 358. The borough was required to bring suit within two years of discovering the conspiracy, or the last act thereof. Here, there is a factual dispute about whether the Johnsons collaborated with Kelley to prevent the borough from discovering allegedly unauthorized timbering which continued up through and including April of 1994. The borough asserts such collaboration was made possible by the landscape's remoteness, Kelley's control over access to the area, and statements Kelley made to borough officials to deceive them into believing Donald Johnson had already stopped work there at an earlier time. This deception prevented the borough from fully discovering what was being done and by whom until

Trooper Gayman informed the borough in March of 1995 of the charges against Kelley.

The borough has produced sufficient evidence to withstand the Johnsons' contention that they are entitled to dismissal of this case as a matter of law. There is a genuine factual dispute as to whether the borough knew or should have known of the alleged conversion by or before March 22, 1994. It is for the jury to determine when the borough acted in a reasonably diligent manner to discover the harm. *Taylor v. Tukanowicz,* 290 Pa. Super. 581, 435 A.2d 181 (1981); *Smith v. Bell Telephone Company,* 397 Pa. 134, 153 A.2d 477 (1959).[6]

The Johnsons also argue the breach of implied contract claim is time-barred. While acknowledging the statute of limitations for breach of implied contract is four years under 42 Pa.C.S. §5525(a)(4), they maintain the complaint sounds primarily in conversion which has only a two-year statute of limitations. Because the borough was untimely in filing the action for conversion, it cannot fall back on its alternate claim for breach of implied contract.

The Johnsons' argument fails for two reasons. First, as we found in our discussion above, there is a genuine issue of material fact as to precisely when the defendants stopped timber operations, and this issue, premised as it is on the credibility of testimony from key players, requires ultimate resolution by the jury. Second, breach of implied contract is an independent cause of action with

---

6. The court directs counsel to design a verdict slip with special interrogatories which will guide the jury in making its initial finding as to whether the borough filed this action within the statutes of limitations.

different elements of proof and different measures of damages than conversion and is based specifically on the Johnsons' assertion in their defense that they were performing services under an oral contract with the borough.

As to this second point, the breach of implied contract claim rests on the contention the Johnsons were unjustly enriched at the borough's expense and must make restitution in an amount equal to the reasonable value of the benefit conferred on them by the borough, here, the cut timber. *Schenck v. K.E. David Ltd.,* 446 Pa. Super. 94, 666 A.2d 327 (1995).[7] Not only are the elements of proof different in implied contract and the tort of conversion, but the available remedies differ under each cause of action as well: the reasonable value of the benefit conferred for the contract claim versus possible treble damages for the conversion claim. Based on the foregoing, the borough is not barred as a matter of law from pursuing the breach of implied contract claim. *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108 (1993).[8]

---

7. Mr. Sirna found the market value of the timber which had allegedly been converted was between $184,664 and $1,000,000 as of April of 1994.

8. The borough is proceeding under 42 Pa.C.S. §8311: Damages in actions for conversion of timber.

"(a) *General rule.*—In lieu of all other damages of civil remedies provided by law, a person who cuts or removes the timber of another person without the consent of that person shall be liable to that person in a civil action for an amount of damages equal to:

"(1) the usual and customary costs of establishing the value of the timber cut or removed and of complying with the erosion and sedimentation control regulations contained in 25 Pa. Code Ch. 102 (relating to erosion control);

"(1.1) the cost of any surveys obtained in connection with the civil action; and

Lastly, the Johnsons argue the conspiracy to defraud claim is likewise barred by the two-year statute of limitations.[9] Their argument is based on the same premises put forth with regard to the claim for breach of implied contract and it fails for the same reasons discussed above.

## Kelley's Motion

Kelley argues the two-year statute of limitations for conversion and conspiracy began to run on April 18, 1993, the date of the *Patriot News* article, making it incumbent on the borough to file suit no later than April 18, 1995, not as it did 11 months later on March 22, 1996. He argues the article shows the borough had actual knowledge of the alleged conversion and conspiracy as of April 18, 1993. We disagree Kelley is entitled to summary judgment as a matter of law on this contention.

First, there are grounds in the record to indicate the borough did not have actual knowledge of any alleged wrongdoing by either the Johnsons or Kelley as of April 18, 1993. Instead what the borough had were mere rumors circulating in the community about unauthorized removal of timber by a local lumberman with the aid of a borough employee with access to Gunter Valley. The borough maintains it did not yet have substantive grounds

---

"(2) one of the following:

"*(i) three times the market value of the timber cut or removed if the act is determined to have been deliberate . . .*" (emphasis supplied)

9. 42 Pa.C.S. §5524(7): "The following actions . . . must be commenced within two years: Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud . . . ."

in April of 1993 to definitively conclude anything illegal had taken place and in fact had reason to be circumspect about the rumors for two reasons: (1) the borough knew it had an agreement with a local lumberman to do timbering in a portion of Gunter Valley (although the scope of the work became a matter of dispute because the solicitor had never reduced the agreement to writing), and (2) the borough was relying on its long-time and trusted water superintendent to assist them with the inquiry and this superintendent provided what the borough now alleges was deliberately false information about the Johnsons' activities.

Second, there are grounds in the record to support the borough's contention that not only did it lack actual knowledge of wrongdoing as of the article's publication date, it acted promptly and with reasonable diligence to learn more about the matter and to remove the Johnsons from the Valley. Contemporaneously with the article's publication, the Franklin County District Attorney, at the borough's request, asked the state police in May of 1993 to devote resources to investigating the matter. The borough then awaited the results of that investigation, relying all the while on Kelley to oversee Gunter Valley as before.[10]

---

10. There is also evidence in the record indicating that at least two persons connected with the borough in an official capacity hindered deeper inquiry into the rumors. According to Trooper Gayman's affidavit, these were borough manager Kevin DeFebbo (who was no longer in that position and lived in another state by the time Trooper Gayman conducted his investigation) and Forest Myers, who was solicitor at that time but stopped acting in that capacity at some point thereafter. Trooper Gayman's affidavit states both men refused to cooperate with his investigation. There might be evidence presented to the jury concerning these serious allegations.

As discussed above, there is a factual dispute as to exactly why and when Donald Johnson stopped timbering. Some evidence in the record suggests he may have voluntarily quit the work in 1992 because he was tired of hearing rumors that local residents suspected him of unauthorized timbering and also because his efforts were not financially worthwhile. Some evidence indicates Kelley told borough officials, in either 1992 or 1993, that Johnson had quit.[11] Other evidence indicates Kelley was ordered by the borough to fire Johnson in 1993 when it was discovered no written contract had ever been drawn up defining the scope of the work to be done in Gunter Valley. (Deposition of Richard Kelley, June 8, 2005, p. 62.) This factual dispute, centered as it is on allegations of deception and concealment by the Johnsons and Kelley, is relevant to the question of when the borough knew of or should have been able to pinpoint the exact date on which the timbering ended. The answer to this question hinges on the jury's assessment of the credibility of the witnesses and other supporting evidence. For this reason, we reject Kelley's contention the record is settled on the question of whether the borough's suit was untimely filed as a matter of law.

Lastly, Kelley argues the borough's breach of implied contract claim, which is one in equity for unjust enrichment, must be dismissed as a matter of law because Cumberland County has already ordered him to pay

---

11. Affidavit of W. Edward Goodhart, member of the Shippensburg Borough Council and the Water Authority at times relevant to this case, attached as exhibit B to the borough's answer to Kelley's motion.

restitution to the borough arising from his conviction for bribery in connection with the timber allegedly removed from Gunter Valley. (N.T. December 31, 2002 sentencing hearing, exhibit B of Kelley's motion.) Kelley argues the borough cannot obtain a civil judgment for that same timber under this equitable claim because this would constitute a double recovery. We disagree.

Section 1106(g) of the Pennsylvania Crimes Code provides: "Preservation of private remedies.—No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment." The court will mold any civil verdict or judgment the jury might assess against Kelley to ensure the borough does not receive a double recovery.

## ORDER

Now this September 15, 2006, upon review and consideration of the defendants' motions for summary judgment, the plaintiff's answers, the record, written argument and the relevant law, the court hereby denies the motions.

Pursuant to Pa.R.C.P. 236, the prothonotary shall give written notice of the entry of this order, including a copy of this order, to each parties' attorney of record and to each party and shall note in the docket the giving of such notice and the time and manner thereof.