# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| KT4 PARTNERS LLC, and SANDRA MARTIN CLARK, as trustee for MARC ABRAMOWITZ IRREVOCABLE TRUST NUMBER 7, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No.: N17C-12-212 EMD CCLD |
| PALANTIR TECHNOLOGIES, INC., and DISRUPTIVE TECHNOLOGY ADVISERS LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: May 25, 2018
Decided: August 22, 2018

*Upon Defendant Palantir Technologies Inc.'s Motion to Dismiss*
***DENIED***
*Upon Rule 12(b)(6) Motion to Dismiss of Defendant Disruptive Technology Advisers, LLC*
***DENIED***

Bartholomew J. Dalton, Esquire, Michael C. Dalton, Esquire, Dalton & Associates, P.A., Wilmington, Delaware, Barry S. Simon, Esquire, Jonathan B. Pitt, Esquire, Stephen L. Wohlgemuth, Esquire, Washington, D.C. *Attorneys for Plaintiffs KT4 Partners LLC and Sandra Martin Clark, as trustee for Marc Abramowitz Irrevocable Trust Number 7.*

Blake Rohrbacher, Esquire, Kelly E. Farnan, Esquire, Kevin Gallagher, Esquire, Kelly L. Freund, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Kevin Orsini, Esquire, Rory A. Leraris, Esquire, Cravath, Swaine & Moore LLP, New York, New York, *Attorneys for Defendant Palantir Technologies, Inc.*

Elena C. Norman, Esquire, Lakshmi A. Muthu, Esquire, Ashley A. Davoli, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, C. Andrew Kitchen, Esquire, Nicholas J. Boos, Alexandra Drury, Maynard Cooper & Gale LLP, San Francisco, California, *Attorneys for Defendant Disruptive Technology Advisers, LLC*

**DAVIS, J.**

## I. INTRODUCTION

This civil action is assigned to the Complex Commercial Litigation Division of the Court. Plaintiffs KT4 Partners LLC ("KT4") and Sandra Martin Clark, as trustee for Marc Abramowitz Irrevocable Trust Number 7 (the "Trust," and together with KT4, "Plaintiffs"), are holders of shares of common and preferred stock of Defendant Palantir Technolgies, Inc. ("Palantir"). Plaintiffs purchased their respective shares of Palantir at times between June 2006 and December 2012 through certain preferred stock purchase agreements.[1]

As pled, Plaintiffs and certain other stockholders of Palantir (the "Selling Group") commenced negotiations for the sale of their Palantir shares to CDH Investments ("CDH") in October 2015.  CDH's agent created a special purpose vehicle for the acquisition known as Brooklands Capital Strategies ("Brooklands"). By December 2015, the Selling Group and Brooklands had reached an agreement in principal for the sale of their respective shares of the Company.  As required by the terms of the Stock Purchase Agreements, the Selling Group advised Palantir of the proposed transaction with CDH/Brooklands.

Plaintiffs contend that Palantir's officers took confidential information regarding the proposed sale of its shares to CDH/Brooklands and directed its broker, Defendant Disruptive Technology Advisors LLC ("DTA," and together with Palantir, "Defendants") to contact CDH and offer CDH the opportunity to purchase shares of Palantir directly from Palantir.  DTA

---

[1] Compl. ¶ 11.  Four of the many stock purchase agreements entered into by the Company are relevant in this case: (i) the Series B Preferred Stock Purchase Agreement, dated on or about June 15, 2006, by and among Palantir, KT4 and certain other investors in the Company; (ii) the Series C Preferred Stock Purchase Agreement, dated on or about February 15, 2008, by and among Palantir, KT4 and certain other investors in the Company; (iii) the Series D Preferred Stock Purchase Agreement, dated on or about November 17, 2009, by and among Palantir, KT4, and certain other investors in the Company; and (iv) the Series E Preferred Stock Purchase Agreement, dated on or about April 20, 2011, by and among Palantir, the Trust and certain other investors in the Company ((i) through (iv) collectively referred to herein as the "Preferred Stock Purchase Agreements").

contacted CDH, proposing certain due diligence opportunities as well as additional shareholder rights (such as a board seat) that Plaintiffs could not offer. As a result, CDH did not proceed with its transaction with Plaintiffs and instead pursued a primary transaction with Palantir.[2] Plaintiffs assert that since CDH declined to move forward with the deal with the Selling Group, the stock price of Palantir has declined and Plaintiffs' have been unable to sell their shares at a comparable price.

On December 14, 2017, Plaintiffs filed their Complaint and Demand for Trial by Jury (the "Complaint"). The Complaint asserts two claims: (i) Count I—Tortious Interference with Prospective Economic Advantage; and (ii) Count II—Civil Conspiracy. On February 16, 2018, Palantir filed its Defendant Palantir Technologies Inc.'s Motion to Dismiss and DTA filed its 12(b)(6) Motion to Dismiss of Disruptive Technology Advisers, LLC (collectively, the "Motions").[3] Plaintiffs filed their Plaintiffs' Answering Brief in Opposition to Defendants' Motions to Dismiss (the "Response") on March 26, 2018. On April 19, 2018, DTA filed its Reply Brief in Support of Rule 12(b)(6) Motion to Dismiss of Disruptive Technology Advisers, LLC, and Palantir filed its Defendant Palantir Technologies Inc.'s Reply Brief in Support of its Motion to Dismiss for Failure to State a Claim (collectively, the "Replies"). The Court held a hearing on the Motions, the Response and the Replies on May 25, 2018. After hearing argument, the Court took the matter under advisement.

For the reasons set forth below, the Court **DENIES** the Motions.[4]

---

[2] It is not clear from the Complaint whether CDH ultimately purchased shares of Palantir directly from Palantir or some other source.

[3] On February 19, 2018, Palantir filed a Motion to Stay Discovery and for a Protective Order. On February 20, 2018, DTA similarly filed a Motion to Stay Discovery and for a Protective Order. Oral argument on the Motions to Stay Discovery and for a Protective Order were heard on March 5, 2018. The Court granted Defendants Motions to Stay Discovery until the hearing on the current Motion scheduled for May 25, 2018.

[4] In addition to the litigation between these parties in this Court, there are at least two other lawsuits between the parties. In 2016, Palantir brought suit against Abramowitz and KT4 for misappropriation of trade secrets in California state court. On March 8, 2017, KT4 brought an action in the Delaware Court of Chancery to enforce its demand for

3

## II. FACTUAL BACKGROUND[5]

### A. Parties and Relevant Non-Parties[6]

KT4 is a Delaware limited liability company.[7]  The Trust is organized under the laws of

the State of Delaware with its principal place of business in Raleigh, North Carolina.[8]  Marc

Abramowitz serves as the managing member of KT4 and is the Trust's grantor.[9]

Palantir is a Delaware corporation with its principal place of business in Palo Alto,

California.[10]  Alexander Karp serves as CEO of the Company.  DTA is a Delaware limited

liability company and acted as a broker for Palantir in connection with several primary

offerings.[11]  Alexander Fishman and Alexander Davis are principals of DTA.

### B. Plaintiffs Investment in Palantir

Plaintiffs purchased millions of shares of Palantir stock between June 2006 and

December 2012.  In connection with those investments, Plaintiffs entered into the Preferred

Stock Purchase Agreements.

Paragraph 3.7 of each Preferred Stock Purchase Agreement requires a party to provide

Palantir with notice of any potential transfer of shares of Palantir's preferred stock.  Paragraph

3.7 also provides that unless Palantir has filed a registration statement under the Securities Act of

---

books and records pursuant to Section 220 of the Delaware General Corporation Law ("Section 220").  Since the Defendants' Motion to Dismiss was filed, the Chancery Court rendered its decision in the Section 220 case.  *See KT4 Partners LLC v. Palantir Technologies, Inc*., C.A. No. 2017-0177-JRS, 2018 WL 1023155  (Del. Ch. Feb. 22, 2018).

[5] Unless otherwise indicated, the facts provided in this Opinion are the facts alleged in the Complaint and Demand for Trial by Jury (the "Complaint").  For purposes of the Motions, the Court must view the Complaint's alleged facts in a light most favorable to KT4.  *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, C.A. No. 09C-09-136 JRS, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[6] While the parties supply certain additional facts in their briefs and additional facts are set forth in the Court of Chancery's decision, the Court has, unless otherwise noted, only included facts as set forth in the Complaint.

[7] Compl. ¶ 6.

[8] *Id.*

[9] *Id.* at ¶ 21.

[10] *Id.*

[11] *Id.* at ¶ 16.

4

1933, each Investor (as defined in each of the Preferred Stock Purchase Agreements) cannot sell its shares—

> unless and until . . . (i) [s]uch Investor shall have notified the Company of the proposed disposition and shall have furnished the Company with a detailed statement of the circumstances surrounding the proposed disposition, and (ii) if reasonably requested by the Company, such Investor shall have furnished the Company with an opinion of counsel, reasonably satisfactory to the Company that such disposition will not require the registration of such shares under the Act. It is agreed that the Company will not require opinions of counsel for transactions made pursuant to Rule 144 except in unusual circumstances.[12]

According to the Complaint, the transfer restrictions set forth in Paragraph 3.7 ensure that Palantir does not need to file a registration statement under the Securities Act of 1933 or otherwise violate the federal securities laws.[13]

## C. The Company's Interference in Plaintiffs' Proposed Sales of Stock

Plaintiffs contend that on two occasions Palantir appropriated confidential information provided by Plaintiffs under Paragraph 3.7 and used the confidential information to try to negotiate a direct sale of Palantir stock with the buyer. The first incident occurred in May 2015 when Plaintiffs negotiated a sale of their Palantir shares with a hedge fund, Highbridge Capital Management LLC ("Highbridge").[14] Plaintiffs notified Palantir of the number of shares to be sold, the purchase price, and the identity of the buyer.[15] Upon learning of the proposed transaction with Highbridge, Palantir informed DTA of the proposed sale and instructed DTA to contact Highbridge and negotiate a direct sale with Palantir instead.[16] Mr. Fishman then visited Highbridge's managing director and made derogatory statements about Mr. Abramowitz. Mr.

---

[12] *Id.* at ¶ 12.
[13] *Id.* at ¶ 13.
[14] *Id.* at ¶ 19.
[15] *Id.*
[16] *Id.* at ¶ 20.

Fishman purportedly did this so as to persuade Highbridge to abandon its deal with Plaintiffs and to complete a primary sale directly with Palantir through DTA.[17] Highbridge "rebuffed DTA's overture and asked Mr. Fishman to leave.[18] According to the Complaint, Mr. Fishman, Mr. Davis and DTA would have received a commission if it had completed a direct sale between Highbridge and Palantir.[19]

The second incident occurred in October 2015. This incident involved the Selling Group negotiations with CDH.[20] CDH was represented by the investment company TPG.[21] TPG formed a special purpose vehicle known as Brooklands for purposes of the transaction.[22] Stephen Brown, Plaintiffs' broker, conducted the negotiations between Plaintiffs and Brooklands.[23] The parties reached an agreement in principle with Brooklands agreeing to purchase a total of 5,950,367 shares of Palantir stock broken down as follows: (i) 3,028,769 were shares of Series B preferred stock owned by KT4, (ii) 1,792,690 were shares of Series C preferred stock owned by KT4, (iii) 275,518 were shares of Series D preferred stock owned by KT4, (iv) 36,385 were shares of Series E preferred stock owned by the Trust, (v) 29,917 were shares of Series E preferred stock owned indirectly by KT4, (vi) 600,000 were shares of common stock owned by KT4 and (vii) 187,088 were shares of common stock owned by the Trust.[24] Brooklands agreed to pay Plaintiffs $9.25 per share of common stock and $11.00 per share of preferred stock for a total purchase price to Plaintiffs of over $64 million.[25]

---

[17] *Id.* at ¶ 21.
[18] *Id.*
[19] *Id.*
[20] *Id.* at ¶ 23.
[21] *Id.* While Brooklands would be the formal purchaser of Plaintiffs' shares of Palantir, the shares would be owned for the benefit of CDH.
[22] *Id.*
[23] *Id.* at ¶ 24.
[24] *Id.* at ¶ 24-25.
[25] *Id.* at ¶ 26.

6

In December 2015, the Selling Group and Brooklands were performing due diligence in anticipation of closing the transaction.[26] At the same time, the Selling Group designated Rosco Hill[27] as the person to inform Palantir of the proposed transaction with Brooklands and to seek guidance from Palantir on how to proceed.[28] Mr. Hill notified a Palantir executive of the pending sale of stock by the Selling Group to Brooklands.[29] Mr. Hill's notice to Palantir was for the sole purpose of effecting the transfer of stock to Brooklands.[30] Mr. Hill purportedly made it clear that proposed transaction was to be kept confidential and could not be used for any other purpose.[31]

On December 23, 2015, Palantir announced a new primary offering to potential investors.[32] DTA, operating under the auspices of SF Sentry Securities Inc., was Palantir's broker on the primary offering.[33] Upon learning of the proposed sale by the Selling Group to Brooklands, Palantir directed DTA to contact CDH and persuade CDH to pursue a primary sale directly with Palantir.[34] In that regard, Mr. Davis sent the managing director of CDH the following LinkedIn message:

> Sorry to reach out to you this way but I'm not sure exactly how best to reach out or who to at your firm. I represent Palantir Technologies in Palo Alto and have been asked by the company to reach out to your firm as you guys demonstrated a level of interest in the company through a third party. If this is not the case, I apologize. In any event, I would appreciate a response back at your convenience so I can discuss the current offering, process and timing.[35]

---

[26] *Id.* at ¶ 27.
[27] Mr. Hill is a Palantir stockholder who was part of the Selling Group. *Id.*
[28] *Id.* Mr. Hill was selected by the Selling Group because he had a good relationship with Palantir.
[29] *Id.*
[30] *Id.* at ¶ 28.
[31] *Id.*
[32] *Id.* at ¶ 29.
[33] *Id.*
[34] *Id.* at ¶ 30.
[35] *Id.* at ¶ 30, Ex. 1

7

Shortly after discovering that Mr. Davis had sent the LinkedIn message to CDH, the Selling Group learned the following additional facts:

a. that Mr. Davis informed CDH that Palantir instructed him to contact CDH;

b. that Palantir learned of CDH's identify through Mr. Hill;

c. that DTA knew that Palantir learned of CDH's identity through Mr. Hill;

d. that Palantir only reached out to CDH after they realized that CDH was a "real buyer";

e. that DTA told CDH that it was trusted by Palantir to be the company's "sole advisor";

f. that DTA offered CDH the opportunity to purchase all the shares it desired in a primary sale directly from Palantir;

g. that Palantir and DTA had offered CDH access to Palantir's "data room," which would have allowed CDH to conduct extensive due diligence on Palantir;

h. that CDH would be able to purchase shares at the same price as the primary offering announced on December 23, 2015;

i. that DTA was planning to meet with CDH in China to further discuss a primary transaction; and

j. that Palantir/DTA had offered CDH other shareholder rights such as a potential seat on Palantir's board.[36]

CDH withdrew from the proposed transaction with the Selling Group in order to pursue the primary sale with Palantir directly.[37] After the proposed sale was terminated, the price of Palantir's shares dropped significantly and Plaintiffs have been unable to find an alternative buyer for its shares at a comparable price.[38]

---

[36] *Id.* at ¶ 31.
[37] *Id.* at ¶ 34.
[38] *Id.* at ¶ 35.

8

## III. PARTIES CONTENTIONS

**A.     MOTION**

In the Motions, Defendants make three basic arguments: (1) California law governs the claims for tortious interference with prospective economic advantage and civil conspiracy; (2) under California law, Plaintiffs' fail to state a claim for tortious interference with prospective economic advantage because Plaintiffs do not properly plead Defendants' conduct was wrongful by some legal measure other than the fact of the interference itself; and (3) without a proper tortious interference claim, Plaintiffs have failed to state a claim for civil conspiracy.[39]

**B.     OPPOSITION**

In the Opposition, Plaintiffs argue: (1) Delaware law governs the claims for tortious interference with prospective economic advantage and civil conspiracy; and (2) under both California law and Delaware law, Plaintiffs state claims for tortious interference with prospective economic advantage and civil conspiracy.

## IV. APPLICABLE LEGAL STANDARD

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[40]  However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[41]  "Dismissal is warranted where the plaintiff has failed to plead facts supporting an element of the claim, or that

---

[39] In the Replies, Defendants also address Plaintiffs' "new argument" that DTA is an unregistered broker.
[40] *See Central Mortg. Co,* 227 A.3d at 536; *Cedars Academy,* 2010 WL 5825343, at *3.
[41] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

9

under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[42]

## V. CHOICE OF LAW

The parties disagree regarding which law—Delaware or California—governs this dispute. Defendants argue that Plaintiffs' substantive claims for tortious interference with prospective economic advantage and civil conspiracy are governed by California law, the state with the "most significant relationship" to the alleged controversy.[43] Plaintiffs contend that their claims are governed by Delaware law based on the internal affairs doctrine as well as under the "most significant relationship" test.

As a threshold matter in a choice-of-law analysis, the Court must first determine whether a conflict truly exists. The Court must compare the competing jurisdictions to determine whether the laws actually conflict on a relevant point."[44] "In determining whether there is an actual conflict, Delaware state courts . . . answer a single and simple inquiry: does application of the competing laws yield the same result?"[45] If the answer is yes, then "the Court should avoid the choice-of-law analysis altogether."[46]

Further, the laws of competing jurisdictions must actually conflict to require an analysis. When one state's laws failed to address a particular issue, it cannot conflict with the laws of

---

[42] *Hedenberg v. Raber*, No. Civ. A. 04C05035 HDR; 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004).
[43] *Eureka Res., LLC v. Range Res.-Appalachia, LLC*, 62 A.3d 1233, 1236-37 (Del. Super. 2012).
[44] *Vichi v. Koninklijke Philips Electronics, N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014).
[45] *Laugell v. Bell Helicopter Textron, Inc.*, C.A. No. 10C-12-054 PRW, 2013 WL 5460164, at *2 (Del. Super. Oct. 1, 2013).
[46] *Vichi*, 85 A.3d at 773.

10

another state.[47]  Where one state fails to address a particular issue, the Court should apply the settled law.[48]

Delaware and California law conflict regarding the elements necessary to establish a claim for tortious interference.  A claim for tortious interference with prospective economic advantage under California law requires the following:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.[49]

In addition to the forgoing, a claim for tortious interference with prospective business advantage under California law must also allege "that the defendant's conduct was wrongful by some legal measure other than the fact of the interference itself."[50]  An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."[51]

Under Delaware law, on the other hand, in order to state a claim for tortious interference with prospective economic advantage,  a plaintiff must allege: "(a) the reasonable probability of a business opportunity, (b) intentional interference with that opportunity, (c) proximate causation, and (d) damages."[52]  Similar to California law, a plaintiff must also allege that the conduct was "wrongful" to support a claim for tortious interference with prospective economic

---

[47] *See Mills Ltd. P'ship v. Liberty Mut. Ins. Co.*, C.A. No. 09C-11-174 FSS, 2010 WL 8250837, at * 4 (Del. Super. Nov. 5, 2010); *Deuley v. DanCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010).

[48] *See Mills Ltd. P'ship*, 2010 WL 8250837, at *4 (applying Delaware law to exhaustion issue since Delaware's approach to exhaustion is in the mainstream and Virginia law had not addressed the issue before).

[49] *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).

[50] *Id.* at 950 (internal quotation marks and citations omitted).

[51] *Id.* at 954.

[52] *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, C.A. No. N15C-03-241 WCC, 2015 WL 6772638, at *6 (Del. Super. Nov. 2, 2015).

advantage, but Delaware looks to the factors enumerated in Section 767 of the Restatement (Second) of Torts to establish wrongfulness.[53] Those factors include:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.[54]

Given that the requirements to establish "wrongfulness" differ under California law and Delaware law, a choice-of-law analysis would seem necessary and warranted in this case. However, the Court is addressing relief under Civil Rule 12(b)(6) and, as set forth below, finds that Plaintiffs have pled a viable cause of action under either California or Delaware law. As such, the Court need not address the issue of which law governs at this stage in the proceedings. The Court would encourage the parties to develop admissible *facts* supporting the choice-of-law analysis in the event the matter comes before the Court in a future motion or before trial.

## VI. DISCUSSION

**A.    Plaintiffs State a Claim for Tortious Interference with Prospective Economic Advantage**

The Court now turns to the merits of Plaintiffs' claims. The important question appears to be whether Plaintiffs have pled "wrongfulness" under either Delaware and/or California law.

When applying the foregoing elements, the Court concludes that the Plaintiffs have pled viable claims. Plaintiffs have asserted that they negotiated an agreement in principal for the sale of their shares of common and preferred stock of Palantir to Brooklands, a special purpose vehicle formed by CDH's agent for the purpose of entering into a sale transaction with the

---

[53] *World Energy Ventures, LLC,* 2015 WL 6772638, at *8.
[54]  *See* Restatement (Second) of Torts § 767 (1979).

12

Selling Group. Plaintiffs assert that the parties had agreed to a price per share and that they were in the process of undergoing due diligence to complete the transaction. As such, Plaintiffs have sufficiently pled a "reasonable probability of a business opportunity" or probability of future economic benefit to the plaintiff."

As to the other elements, Plaintiffs have asserted that Defendants learned of the potential transaction when Mr. Hill notified a Palantir executive of the pending sale to Brooklands. Once Defendants learned of the potential transaction with CDH, the Complaint alleges that Palantir, through DTA as its broker, acted intentionally and in bad faith by contacting CDH directly and trying to persuade CDH to pursue a primary offering with Palantir instead of its transaction with the Selling Group. By doing this, Palantir and DTA caused CDH (acting through Brooklands) to withdraw from the proposed transaction with the Selling Group. Moreover, Plaintiffs plead that if DTA[55] was successful in getting CDH to pursue a primary offering with the Company, then DTA would be entitled to significant commissions in connection with the sale, and Palantir and its officers would be enriched by such a transaction.

Defendants challenge whether Plaintiffs allege the type of "wrongfulness" necessary under California law. The Court finds that enough facts have been pled such that a reasonable factual inference can be drawn in Plaintiffs' favor that Defendants acted "wrongfully" under either Delaware or California law. California requires that Plaintiffs allege that Defendants' conduct was wrongful by some legal measure other than the fact of the interference itself—*i.e.*, Defendants committed some other act that is proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard. The Court finds that Plaintiffs

---

[55] In addition, Plaintiffs assert, in the Response, that DTA is an unregistered broker that made an offer of securities in violation of federal securities laws. Such an allegation, if made in the Complaint, could suffice for purposes of pleading an independent wrong under either Delaware or California law.

13

have pled conduct other than the interference that was wrongful. For example, Plaintiffs allege a civil conspiracy to commit fraud (DTA and Palantir working together to provide "false, misleading, and deceptive representations" to Plaintiffs); breach of duty by Palantir (aided and abetted by DTA) not to use confidential information provided by Plaintiffs to disrupt Plaintiffs' transaction with Booklands; and a breach of good faith and fair dealing implied in the Preferred Stock Purchase Agreements. While none of these are proscribed by constitutional, statutory or regulatory law, each is an independent wrongful common law act separate from the claim for tortious interference with prospective economic advantage. As alleged, Defendants are not just competitors of Plaintiffs who just happen to "cut a better deal" with CDH directly in the normal course of business. Instead, Plaintiffs allege that they had a special contractual arrangement with Palantir that required disclosure and that Palantir and DTA misused that arrangement to gain an improper advantage when dealing with CDH.

Finally, Plaintiffs allege proximate cause and damages. Plaintiffs allege that by intentionally interfering with the CDH sale, Plaintiffs have not been able to sell their shares at a comparable price. Moreover, Plaintiffs allege damages due to the fact that the value of their shares have decreased since CDH entered into a separate agreement with Palantir.

Under those alleged facts, if taken as true, it is "reasonably conceivable" that Plaintiffs could recover under a claim for tortious interference with potential economic advantage. Accordingly, the Court will **DENY** the Motion as to Count I of the Complaint.

**B.** **Plaintiffs State a Claim for Civil Conspiracy in Connection with Their Claim for Tortious Interference with Prospective Economic Advantage under Delaware Law**

Defendants' sole argument is that a civil conspiracy claim requires an underlying tort and that since the tortious interference claim fails to state a claim, then the civil conspiracy claim must also fail. The Court has determined that, for purposes of Civil Rule 12(b)(6), Plaintiffs

14

have pled a valid claim for tortious interference with prospective economic advantage. As such, the Court finds that cause does not exist to dismiss the civil conspiracy claim.

DTA argues that Plaintiffs have failed to allege that it had "actual knowledge" that a tort was planned or that DTA "concurred" in the tortious scheme with knowledge of its unlawful purpose. The Court disagrees. Plaintiffs allege that the DTA had "actual knowledge of the planned tortious interference and concurred in the tortious scheme with the knowledge of its unlawful purpose."[56] Plaintiffs also allege (1) that DTA knew that Palantir shareholders were required to give notice of sales of stock to the Company, (2) that DTA knew that Palantir was only aware of the opportunity with CDH through the Selling Group, and (3) that DTA offered CDH the opportunity to purchase as many shares of Palantir as it desired. These allegations are sufficient to demonstrate actual knowledge and to support a claim for civil conspiracy.

The Court finds that Plaintiffs have pled a valid claim for civil conspiracy. Therefore, the Court shall **DENY** the Motions as to Count II of the Complaint.

## VII. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motions.

**IT IS SO ORDERED**

*/s/ Eric M. Davis*
**Eric M. Davis, Judge**

cc: File&ServeXpress

---

[56] Compl. at ¶ 44.

15